■ CHRISTOPHER R. RICHIED, Appellant, v D.H. BLAIR & Co., INC., et al., Respondents. [710 NYS2d 25] —Judgment, Supreme Court, New York County (Charles Ramos, J.), entered June 30, 1998, dismissing the complaint and bringing up for review a prior order, same court and Justice, entered June 1, 1998, which granted defendants' motion to dismiss the complaint for failure to state a cause of action, affirmed, without costs. Appeal from the order dismissed, without costs, as subsumed in the appeal from the judgment.

This action is based on an employment agreement in which, under paragraph 1 (b), defendant investment bank agreed to compensate plaintiff, in addition to his annual salary, in the amount of 50% of its fees "[f]or any financing services provided to Clients (private placements of debt or equity, arranging bank or finance company financing, *but excluding public offerings of securities for which compensation may be outlined in (d) below)*" (emphasis added). In paragraph 1 (d), defendant agreed to compensate plaintiff, in addition to his annual salary, 5% of its investment position in entities established or funded by defendant in venture capital situations created "as a result of an introduction [made] by [plaintiff]."

Plaintiff now claims that he is entitled to 50% of the fees, which includes an investment position, earned by defendant in connection with a public offering for a client he did not introduce. His argument is that the absence of a comma between the words "securities" and "for" in the phrase "public offerings of securities for which compensation may be outlined in (d) below" evinces an intent to limit the exclusion of public offerings from the 50% compensation rate provided for in paragraph 1 (b) only to those public offerings for which an alternative compensation scheme is provided for in paragraph 1 (d). In other words, plaintiff argues that he is entitled to 50% of the fees earned in connection with this public offering even though the work was done on behalf of a client he did not introduce.

The motion court aptly characterized plaintiff's reading as "strained," noting that the word "may," completely ignored by plaintiff, evinces an intent not to condition the exclusion of compensation in paragraph 1 (b) upon the availability of compensation in paragraph 1 (d), and also noting that punctuation is an unreliable interpretive tool to which resort should be had only when other means of interpretation fail (*see, Reliance Grant El. Equip. Corp. v Reliance Ball-Bearing Door Hanger Co.*, 205 App Div 320, 323). We agree.

As to public offerings for which plaintiff did not provide the introduction, as is the case here, the dissent finds paragraph 1 (b) to be simply unclear in that although it initially refers to *any* financing, it thereafter parenthetically lists only "placements of debt or equity [and] arranging bank or finance company financing." The dissent finds it unclear whether these latter terms are intended to be illustrative examples or limitations and that it is entirely possible to read the phrase "excluding public offerings of securities for which compensation may be outlined in (d) below" as excluding only those public offerings to which subparagraph (d) applies.

Such a strained interpretation, however, ignores the plain meaning of paragraph 1 (b) when it is read, as it must be, in conjunction with paragraph 1 (d). The parenthetical language of paragraph 1 (b) specifically excludes "public offerings." Paragraph 1 (d) includes public offerings *only* where plaintiff made the introduction resulting in the creation of a new company capitalized by a public offering, in which case he would get *5% of the total investment interest*. On the other hand, pursuant to paragraph 1 (b), plaintiff would get *50% of commissions, financing fees or brokerage fees* for any financing services offered to clients, other than public offerings, whether or not he made the introduction. Given the clear distinction in the agreed upon compensation, there is simply no basis for a finding of ambiguity in the parties' agreement. Under plaintiff's reading, he would receive 50% compensation on public offerings for defendant's existing clients and only 5% compensation on public offerings for clients he introduced—clearly an unexpected and unreasonable result.

The breach of contract and promissory estoppel claims were therefore properly dismissed as inconsistent with the agreement (*see, Prestige Foods v Whale Sec. Co.*, 243 AD2d 281). The fraud claim against the individual defendant was properly dismissed for failure to adequately allege justifiable reliance and damages (*see, King v Schonberg & Co.*, 233 AD2d 242). Since no compensation was owed plaintiff under the agree-

ment, he cannot claim any damages as a result of the individual defendant's alleged unkept promise to make a part payment of the compensation he claims is due thereunder. Concur—Rosenberger, J. P., Tom, Andrias and Buckley, JJ.

Ellerin, J., dissents in part in a memorandum as follows: While I find that the motion court properly dismissed plaintiff's causes of action for promissory estoppel and fraud, I would find that plaintiff has set forth a prima facie case for breach of contract and would reverse the court's dismissal of that cause of action.

Plaintiff is a former vice-president of defendant investment bank, D.H. Blair & Co., Inc. (DHB). In February 1991, plaintiff and DHB entered into an employment agreement which provided, in pertinent part, that, in addition to plaintiff's annual salary, he would receive the following compensation:

"b) For any financing services provided to Clients (private placements of debt or equity, arranging bank or finance company financing, but excluding public offerings of securities for which compensation may be outlined in d) below), whether or not in conjunction with a transaction included in a), [plaintiff] shall receive 50% of the commission or financing fees of DHB. Similarly, [plaintiff] shall receive *50% of any brokerage fees generated by [plaintiff]* * * *

"d) If an introduction by [plaintiff] results in the establishment of a new entity, or in the funding of an entity by DHB in a venture capital situation, then *[plaintiff] shall receive five percent (5%) of the total investment interest* (i.e., securities, equities and other investment positions) of DHB in each such entity." (Emphasis added.)

Pursuant to the agreement, plaintiff began performing finance services for a DHB client, which ultimately culminated in an agreement that DHB would underwrite an initial public offering of the client's stock. DHB received commissions and fees of approximately $598,000 in cash as well as warrants which allegedly reached a value of approximately $3,400,000. At issue on this appeal is whether plaintiff is entitled, under the above agreement, to 50% of the commissions and fees received by DHB. The motion court held that the agreement unambiguously excluded all public offerings from the type of transactions for which plaintiff would be paid 50% of commissions and fees and therefore dismissed plaintiff's complaint for failure to state a cause of action.

I would find that the agreement is ambiguous. The agreement clearly excludes from the type of transactions for which plaintiff would be paid 50% of commissions and fees any public

offering for which plaintiff had provided the introduction. For such public offerings, plaintiff's compensation would instead be governed by paragraph 1 (d), by which he would receive 5% of the total investment interest. The majority overlooks the significant difference between a total investment interest, of even 5%, in distinction to 50% of commissions or fees. The economic potential of such investment interest could far exceed the amount of fees or commissions.

As to public offerings for which plaintiff did not provide the introduction, as was the case here, the agreement is simply unclear. Paragraph 1 (b) initially refers to *any* financing services provided to clients, but then, parenthetically, lists only "private placements of debt or equity [and] arranging bank or finance company financing." It is unclear whether these are illustrative examples, or limitations.

Moreover, as to the exclusion, contrary to the majority, I do not find that the use of the term "may be" rather than "is" in the phrase "excluding public offerings of securities for which compensation *may be* outlined in (d) below" clearly and unambiguously means that the exclusion applies to all public offerings while merely noting that for some public offerings, subparagraph (d) will come into play. Instead, it is entirely possible to read the sentence as excluding only those public offerings to which subparagraph (d) applies.

Indeed, an intent to exclude all public offerings would have been clearly evinced had the clause simply excluded public offerings from subparagraph b). As written, taken as a whole, the clause is ambiguous.

In light of this ambiguity, I would find that it was error to grant defendants' motion to dismiss the cause of action for breach of contract and would, instead, grant the parties the opportunity to discover and present extrinsic evidence relevant to intent (*see, Rivera v St. Regis Hotel Joint Venture*, 240 AD2d 332, 334).